Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Robert K. Friedl (SBN 134947)
Robert.Friedl@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Dale James Morgado
Dmorgado@ffmlawgroup.com
Feldman, Fox & Morgado, P.A.
100 North Biscayne Boulevard
29th Floor, Suite 2902
Miami, Florida 33132
Telephone:    (305) 222-7850
Facsimile:    (305) 384-4676

Attorneys for Plaintiff Luis Rosado

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA—SAN JOSE DIVISION

| | |
|---|---|
| LUIS ROSADO, individually, and on behalf of other members of the general public similarly situated,<br><br>       Plaintiff,<br><br>      vs.<br><br>EBAY, INC., a Delaware corporation,<br><br>      Defendant. | Case No.:  5:12-cv-04005-EJD<br><br>Assigned for all purposes to the Hon. Edward J. Davila<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:      February 25, 2016<br>Time:     9:00 a.m.<br>Place:    Courtroom 4 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 25, 2016, at 9:00 a.m., in Courtroom 4 of the above-captioned Court, located at 280 South 1st Street, San Jose, California 95113, the Honorable Edward J. Davila presiding, Plaintiff Luis Rosado, on behalf of himself and all others similarly situated, will, and hereby does, move this Court to award attorneys' fees in the amount of $300,000, counsel's out-of-pocket costs in the amount of $13,050.04, and class representative enhancement payment in the amount of $5,000 to Plaintiff.

This Motion should be granted because under the California and Ninth Circuit common fund doctrines, the fee request is reasonable when measured against the benefits conferred by the Settlement. Moreover, public policy recognizes that attracting competent counsel to litigate consumer cases on behalf of clients unable to pay hourly fees requires attorney fee awards commensurate with such risks and that no action would likely have been taken by Class Members individually, and no compensation would have been recovered for them, but for Plaintiff's services on their behalf. The Settlement Class's response to date confirms that the requested attorneys' fees, costs and expenses, and enhancement payment should be approved.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Attorneys' Fees, Costs, and Class Representative Enhancement Payment; (3) the Declaration of Robert K. Friedl; (4) Declaration of G. Arthur Meneses; (5) the Declaration of Luis Rosado; (6) the records, pleadings, and papers filed in this action; and (7) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

1    Dated:  December 1, 2015                    Respectfully submitted,

2                                                                   Capstone Law APC

3

4                                                     By:  /s/ Robert K. Friedl
                                                              Jordan L. Lurie
5                                                             Robert K. Friedl
                                                              Tarek H. Zohdy
6                                                             Cody R. Padgett

7                                                             Attorneys for Plaintiff Luis Rosado

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 1

II.    ARGUMENT ............................................................................................ 2

    A.    Plaintiff's Request for Attorneys' Fees Should Be Evaluated
        Under a Deferential Standard.................................................................. 2

    B.    Plaintiff's Request for Attorneys' Fees in the Amount
        Representing 25% of the Common Fund Is Reasonable ................................... 3

    C.    Other Factors Support Plaintiff's Fee Request.................................................... 6

        1.    The Results of the Litigation Support the Requested Fees........................ 7

        2.    The Substantial Contingent Risk, Including the Risk of
            Further Litigation, Supports the Requested Award of
            Attorneys' Fees.......................................................................... 9

        3.    The Skill of Counsel and Work Performed Support the Fee
            Request..................................................................................... 13

    D.    The Lodestar Cross-Check Attests To the Reasonableness of the
        Negotiated Fee Request................................................................................ 14

    E.    Plaintiff's Out-Of-Pocket Expenses Should Be Reimbursed .......................... 17

    F.    The Enhancement Payment to the Named Plaintiff Is Fair and
        Reasonable ................................................................................................. 18

III.   CONCLUSION ...................................................................................... 21

MOTION FOR ATTORNEYS' FEES, COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENT

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aarons v. BMW of North America*, No. 11-7667-PSG, 2014 U.S. Dist.
LEXIS 118442 (C.D. Cal. Apr. 29, 2014) ........................................................ 15

*Aguayo v. Oldenkamp Trucking*, No. F04-6279 AWI LJO, 2006 U.S. Dist.
LEXIS 79425, 2006 WL 3020943 (E.D. Cal. Oct. 17, 2006) .......................... 20

*Amochaev v. Citigroup Global Markets, Inc*., No. 05-1298 PJH (N.D. Cal.
Aug. 13, 2008) ................................................................................................ 20

*Asghari v. Volkswagen Group of America, Inc.*, No. 2:13-cv-02529-MMM-
VBK (C.D. Cal. May 29, 2015) ...................................................................... 15

*Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245 (N.D. Cal. 2015) ........................ 16

*Bernal v. Davita, Inc*. No. 5:12-cv-03255-PSG (N.D. Cal. Jan. 14, 2014) ..................... 20

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................ 14

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) .................. 17

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ................................... 6

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ............................................................ 14

*Custom LED, LLC v. eBay, Inc*, No. 12-CV-00350-JST, 2014 WL 2916871
(N.D. Cal. June 24, 2014) ................................................................................ 8

*Dennis v. Kellogg Co*., No. 09-CV-1786-IEG (WMc), 2010 U.S. Dist.
LEXIS 116924, 2010 WL 4285011 (S.D. Cal. Oct. 14, 2010) ....................... 20

*Elliot v. Rolling Frito-Lay Sales*, 2014 U.S. Dist. LEXIS 83796 (C.D. Cal.
June 12, 2014) ................................................................................................... 7

*Faigman v. AT & T Mobility LLC*, No. C06-04622 MHP, 2011 U.S. Dist.
LEXIS 15825, 2011 WL 672648 (N.D. Cal. Feb. 16, 2011) ......................... 20

*Fischel v. Equitable Life Assur. Soc.*, 307 F.3d 997 (9th Cir. 2002)............................... 17

*Grant v. Capital Mgmt. Servs., L.P*. 2014 U.S. Dist. LEXIS 29836 (S.D.
Cal. Mar. 5, 2014) ........................................................................................... 19

*In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011) ......... 5, 6, 14

*In re eBay Litig.*, No. C- 07-02198 RMW, 2012 U.S. Dist. LEXIS 128616

(N.D. Cal. Sept. 10, 2012) ........................................................................... 12

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............ 14, 18

*In re Linkedin User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) .............................. 8

*In re Magsafe Apple Power Adapter Litig.*, 2015 WL 428105 (N.D. Cal.

Jan. 30, 2015).......................................................................................... 15, 16

*In re Matter of Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) ....................... 19

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ..................................... 20

*In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988 (9th Cir. 2010) ....................... 1

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2014) .......................... 6

*In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294 (3d Cir. 2005)................................... 14, 16

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act

(FACTA) Litig.* 295 F.R.D. 438 (C.D. Cal. 2014)................................................... 19, 20

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th

Cir. 1994) ........................................................................................ 5, 10, 14

*Johnson v. General Mills, Inc.*, No. 10-00061-CJC, 2013 U.S. Dist. LEXIS

90338 (C.D. Cal. June 17, 2013)...................................................................... 18

*Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST (MLGx), 2013

U.S. Dist. LEXIS 91636 (C.D. Cal. June 28, 2013) ....................................... 15

*Klee v. Nissan N. Am., Inc.*, 2015 U.S. Dist. LEXIS 88270 (C.D. Cal. July

7, 2015) ...................................................................................................... 15

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995)....................... 4

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. Cal. 2012).............................. 12

*Mills v. Auto-Lite Co.*, 396 U.S. 375 (1970)...................................................................... 5

*Missouri v Jenkins*, 491 U.S. 274 (1989)........................................................................ 17

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ....................................... 15

*Noll v. eBay, Inc.*, 309 F.R.D. 593 (N.D. Cal. 2015) .................................................. 8, 13

*Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) ...................................................................................................... 15

*Radcliffe v. Experian Info. Solutions* 715 F.3d 1157 (9th Cir. 2013) .............................. 19

*Rodriguez v. West Publ'g Corp.* 563 F.3d 948 (9th Cir. 2009).......................................... 18

*Rose v. Bank of Am. Corp.*, No. 5:11-CV-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) .................................................................................... 15

*Ross v. US Bank Nat'l Ass'n*, No. 07-02951-SI, 2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept. 29, 2010)................................................................. 20

*Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665-BRO AGRX, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ................................ 16

*Schaffer v. Litton Loan Servicing, LP* No. 05-07673-MMM,  2012 U.S. Dist. LEXIS 189830 (C.D. Cal. Nov. 13, 2012).................................... 20, 21

*Staton v. Boeing Co*., 327 F.3d 938 (9th Cir. 2003)....................................................... 3

*Stevens v. Safeway, Inc.*  No. 05-01988,  2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008).......................................................................... 20

*Sutton v. Bernard*, 504 F.3d 688 (7th Cir. 2007) ......................................................... 6

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) ......................................... 5

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ....................................... 6

*Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co*., 460 F.3d 1253 (9th Cir. 2006)........................................... 18

*Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294 (N.D. Cal. 1995) .............. 19, 20

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ................................ 6, 10, 17

*York v. Starbucks Corp.*, No. 08-07919 GAF (C.D. Cal. Oct. 29, 2013)......................... 20

STATE CASES

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ..................................................... 4, 8

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ................................................................. 10

*Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19 (2000) ......................................... 4, 5, 9

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) ....................................................................... 4

MOTION FOR ATTORNEYS' FEES, COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENT

1

2   **SECONDARY AUTHORITIES**

3   4 *William B. Rubenstein et al.*, *Newberg on Class Actions* (4th ed. 2008) ...................... 18

4   Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J.

5     (1981) ..................................................................................................... 11

6   Posner, Economic Analysis of Law  (4th ed. 1992) ......................................... 11

7   Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action*

8     *Settlements:  An Empirical Study*, J. of Empirical Legal Studies, Vol. 1,

9     Issue 1, March 2004 .......................................................................... 4

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ATTORNEYS' FEES, COSTS AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENT

## I.   INTRODUCTION

Plaintiff Luis Rosado moves the Court to award attorneys' fees in the amount of $300,000.00, reimbursable expenses of $13,050.04 and for Class Representative Enhancement Payment in the amount of $5,000.  This motion comes after Plaintiff and Defendant eBay, Inc. ("Defendant" or "eBay") reached a settlement that resolves Plaintiff's claims that certain aspects of eBay's "Buy It Now" (or "BIN") feature violate California's consumer protection laws.  According to Plaintiff, eBay deprived him and putative class members of the full value of their purchased listing periods by not relisting items for sale when a prospective buyer failed to complete the payment process after clicking the "Buy It Now" option—even if there was time remaining in the listing periods.  Under the Settlement, class members have the submited claims for $5 to $15[1] in cash (depending on whether the items they attempted to sell were vehicles ($10), non-vehicles ($5), or both ($15).  On average, these payments will compensate Claimants for the **entire amount** of disputed fees for the "Buy It Now" listings at issue.

Having obtained valuable relief for the Class, Plaintiff seeks an award of attorneys' fees and litigation expenses in the amount of $300,000.00, or 25% of the non-reversionary settlement fund of $1,200,000.  The requested award is fair, reasonable, and appropriate under the California and Ninth Circuit common fund doctrines in light of the favorable results, the contingent risk assumed by Plaintiff's Counsel, and Plaintiff's effort to deliver benefits promptly to the Class.  The percentage of the fund requested is consistent with the Ninth Circuit's 25% benchmark.  To date, only a handful of Class Members have opted out, and not a single Class Member has objected.

Other factors support this fee request.  Plaintiff's Counsel delivered significant results to the Class in the face of adverse conditions, having invested approximately one

---

[1] These amounts may increase or decrease depending on the number of claims submitted.  The claims period ends on December 8, 2015, and Plaintiff is filing the motion for attorneys' fees ahead of the claims and objection deadline in accordance with the timing requirements set forth in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010).

thousand hours of their time toward the zealous prosecution of Plaintiff's claims with no guarantee of compensation.  Plaintiff's Counsel devoted hours to:  (1) opposing two separate motions to dismiss; (2) engaging in informal investigation and conducting interviews of class members; (3) preparing for mediation and developing a realistic model of eBay's exposure; (4) analyzing substantive case law that may affect the outcome of this case;  (5) negotiating a settlement that provides automatic payments to Class Members; and (6) preparing the motions for preliminary approval and final approval of the class action settlement, and the instant motion for attorneys' fees. Plaintiff's lodestar of $557,538 far exceeds the requested fees, further supporting this fee request.

Plaintiff also requests an enhancement payment for his services on behalf of the Settlement Class and reimbursement of Plaintiff's Counsel's out-of-pocket litigation expenses.

For the reasons set forth in greater detail below, Plaintiff respectfully submits that the requested attorneys' fees, costs and expenses, and the enhancement payment are fair and reasonable, and should be approved.

## II.   ARGUMENT

### A.   Plaintiff's Request for Attorneys' Fees Should Be Evaluated Under a Deferential Standard

Courts have encouraged litigants to resolve fee issues by agreement.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  This is consistent with the strong public policy of encouraging and approving non-collusive settlements, including those in class actions, and avoiding a "second major litigation" arising from a request for attorneys' fees after the matter has been resolved.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee").  In light of the policy favoring settlement of fee disputes, district courts must account for the fact that "the parties are compromising to avoid litigation."  *Laguna v. Coverall North America*, 753 F.3d 918, 922 (9th Cir. 2014), *vac'd on other grounds*, 2014 U.S. App. LEXIS

21950 (9th Cir. 2014).  Accordingly, the Ninth Circuit holds that "the court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Id.* (*quoting Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003) (internal quotations omitted; emphasis added).  Thus, while the Court must conduct an independent inquiry into the reasonableness of the fee request, it should give substantial weight to the parties' agreement as to the reasonableness of the amount of attorneys' fees.

These considerations are particularly appropriate where, as here, the parties negotiated the settlement at arm's-length with the guidance of an experienced mediator. *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 *12 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a collusive settlement); *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S. Dist. LEXIS 145551 *43 (N.D. Cal. June 25, 2008) (same).  The settlement negotiations were adversarial and non-collusive, and the resulting settlement of attorneys' fees, as a function of the overall settlement's value, is likewise fair, reasonable, and free of collusion.

**B.**     **Plaintiff's Request for Attorneys' Fees in the Amount Representing 25% of the Common Fund Is Reasonable**

Plaintiff, zealously advocating on the behalf of the Class, has negotiated relief that will compensate Class Members for their unused listing time when a buyer clicks on the BIN option without going through with the purchase.  Under the Settlement, Class Members have had the option to submit claims for $5 to $15[2] in cash (depending on whether the items they attempted to sell were vehicles ($10), non-vehicles ($5), or both ($15)).  Following the simple claims procedure approved by the Court, if payments to class members total less than 25% of the Net Settlement Fund, claimants' payments will

---

[2] These amounts may increase or decrease depending on the number of claims submitted.

1    be increased on a pro-rata basis.  Any further remainder of the Net Settlement Fund will

2    be distributed to other eBay sellers as described below—regardless of whether they

3    submitted claims for payment—in the form of eBay credit.  No portion of the $1.2

4    million settlement fund will revert to eBay and no amount will need to be paid to any

5    organization as a cy pres recipient.

6         Plaintiff now seeks the negotiated fees representing 25% of the $1.2 million

7    settlement fund.  The fee request is reasonable under both federal and California law.

8    Under California law,[3] the common fund method for awarding attorneys' fees is

9    appropriate where, as here, attorneys have been instrumental in creating a settlement

10   fund that benefits all class members.  *See Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977)

11   (noting that federal and state courts have long recognized that when attorneys create a

12   common fund that benefits a class, the attorneys have an equitable right to be

13   compensated from that fund); *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 48

14   (2000) ("Courts agree that, because the percentage-of-the-benefit approach is 'results

15   oriented rather than process-oriented, it better approximates the workings of the

16   marketplace' than the lodestar approach." [citation omitted]).  Courts applying California

17   law routinely award attorneys' fees equally or exceeding 25% of the common fund's

18   total potential value.  *See, e.g.*, *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11

19   (2008) ("[S]tudies show that . . . fee awards in class actions average around one-third of

20   the recovery."); Eisenberg & Miller, *Attorney Fees in Class Action Settlements:  An

21   Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35

22   (independent studies of class action litigation nationwide have come to a similar

23   conclusion that a one-third fee is consistent with market rates).

24        Plaintiff's fee request is also reasonable under federal law.  While district courts

25   have the discretion to award attorneys' fees based on either the lodestar method

26   _____

27        [3] For cases where state law applies, the state law governs "not only the right to
     fees, but also in the method of calculating the fees."  *Mangold v. Calif. Public Utilities

28   Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

(essentially a modification of hourly billing) or the percentage method, where fees are requested from a certain and calculable common fund, the percentage-of-the-fund method is appropriate.  *See In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011).  The Supreme Court has consistently recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970).  The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

Courts recognize that the percentage method offers important advantages over the lodestar method, particularly when an ascertainable fund exists:

> [I]n class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%. This will encourage Plaintiff's attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions.

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).  Indeed, in *Bluetooth*, the court recognized that one important advantage of the common fund method is that fees are "easily quantified," making a fee determination simpler than the "often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942; *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) ("[A] percentage-of-the-fund approach is less demanding of judicial resources than the lodestar method.").  Moreover, the common fund method better "approximates the workings of the marketplace than the lodestar approach" in setting the price of contingent fees. *Lealao*, 82 Cal. App. 4th at 48 (quotation omitted).  This is because the percentage method "provide[s] incentives roughly comparable to those negotiated in the

private bargaining that takes place in the legal marketplace." *Id.* In this way, applying the percentage method advances the judicial policy of "award[ing] counsel the market price for legal services." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007).

The Ninth Circuit has generally established 25% of a common fund as a "benchmark" award for attorney fees.[4] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). As the Ninth Circuit has explained, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any "special circumstances" justifying a departure." *In re Bluetooth*, 654 F.3d at 942. However, the "exact percentage [awarded] varies depending on the facts of the case, and **in most common fund cases, the award exceeds that benchmark**." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (emphasis added). Here, Plaintiff is seeking the benchmark figure, which is presumptively reasonable. Thus, Plaintiff's requested attorneys' fees, representing 25% of the entire settlement fund, is consistent with established Ninth Circuit precedent and should be awarded.

## C.    Other Factors Support Plaintiff's Fee Request

In addition to the results achieved and awards in comparable cases, courts in this Circuit have also considered additional factors when evaluating the fairness of the award. These factors include:  (1) the risks of further litigation; (2) the contingent nature of the fee; (3) the skill of the attorneys; and (4) a lodestar cross-check. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). This is consistent with this Court's analysis. In awarding 30% of the common fund of $1.6 million for attorneys' fees in a recent case, this Court

---

[4] The calculation of attorneys' fees is based on a percentage of the ***entire*** potential benefit created by class counsel, including litigation expenses, claims administration, and other cost items that benefit the Class. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2014) ("[D]istrict court did not err in calculating the attorneys' fees award by calculating it as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses").

1  considered the "difficult issues facing the class," "the significant risk counsel accepted in

2  taking the case entirely on contingency" and that "the settlement provided a very

3  favorable result for the class." *Elliot v. Rolling Frito-Lay Sales*, 2014 U.S. Dist. LEXIS

4  83796, at *25 (C.D. Cal. June 12, 2014).  While no single factor is determinative of

5  reasonableness, each factor supports Plaintiff's request for attorneys' fees in the amount

6  of 25% of the common fund.

### 1.   The Results of the Litigation Support the Requested Fees

8       Through the Settlement, Plaintiff and Plaintiff's Counsel have vindicated the

9  rights of eBay customers, securing $1,200,000 in relief for their claims.  Under the

10  Settlement, Class Members have submitted claims for $5 to $15 in cash (depending on

11  whether the items they attempted to sell were vehicles ($10), non-vehicles ($5), or both

12  ($15)).  Following a simple claims procedure, if payments to class members total less

13  than 25% of the Net Settlement Fund, claimants' payments will be increased on a pro-

14  rata basis.  Any further remainder of the Net Settlement Fund will be distributed to

15  Claimants with an active eBay account on a pro-rata basis as  eBay credit, capped at

16  $50.00.  If additional funds still remain, the final residual amount will distributed to all

17  class members (irrespective of whether they submitted a claims form) in the form of

18  eBay credit.  (*See* Settlement Agreement ¶ 2.1(d)-(e).)

19       Plaintiff has achieved his litigation objectives as class members are fully

20  compensated for their damages in most instances.  This is because both the amount at

21  issue—the residual listing fees—and the frequency of violations—are small: eBay

22  sellers are harmed in the manner alleged by Plaintiff only under highly specific

23  conditions.  Given these limitations, the $1.2 million fund secured by Plaintiff is

24  substantial.  Moreover, Plaintiff's defeat of two dispositive motions filed by eBay proved

25  to be critical in the case—absent those victories, the Settlement benefits would never

26  have been obtained.  (*See* Dkt. Nos. 58 (order denying motion to dismiss first amended

27  complaint), 70 (order denying motion to dismiss second amended complaint).)  Plaintiff

28  also negotiated non-reversionary relief for the Class, insisting on an inexpensive but

broad notice plan.  All together, Plaintiff's skill in achieving this positive result for the Class supports the requested attorneys' fees.

The requested fees of 25% of the settlement is consistent with other consumer class action settlements of this type, including those involving eBay.  *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 609 (N.D. Cal. 2015) (awarding 25% of the common fund, including applying a 1.7 multiplier on a cross-check, in a consumer class action involving eBay); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 590-91 (N.D. Cal. 2015) (awarding the 25% of the common fund in a consumer class action); *Custom LED, LLC v. eBay, Inc*, No. 12-CV-00350-JST, 2014 WL 2916871, at *9 (N.D. Cal. June 24, 2014) (awarding 25% of the common fund, including applying a 1.94 multiplier on the lodestar cross-check, in a consumer class action involving eBay).

Moreover, "success" in this context encompasses other positive results not necessarily reflected in the Settlement amount:

> [Success achieved] could include changes in company policies that were not part of the settlement, the dollar value of the settlement benefits, and the absolute size of the class of persons who are eligible for the benefit.  This category would also encompass other measures of the litigation's success including the early stage at which it produced benefits, and the availability or unavailability of less costly means for achieving the same benefits.

*Chavez v. Netflix*, 162 Cal. App. 4th at 61.  Here, eBay has already changed its policies following the filing of Plaintiff's suit, and no future eBay seller will suffer the harms alleged in this suit.[5]

*Chavez* also instructs courts to credit parties for successfully striking a deal at an early stage in litigation.  Here, Plaintiff resolved the matter prior to a full-blown certification motion, Plaintiff's Counsel was able to avoid the resource drain (including

---

[5] On March 19, 2013, eBay modified its payment process so that most BIN listings would have the benefit of the Immediate Payment option by default.  Under the modified policy, "'Buy It Now' items will continue to be available for sale until a buyer commits and/or pays."

1    the likely depositions of numerous class members and extensive briefing), not to

2    mention the risk of losing and ringing death knell for the Class, while obtaining

3    substantial monetary relief for Class Members.

4          In addition to the valuable monetary and nonmonetary relief provided by the

5    Settlement, the public interest served by Plaintiff's lawsuit likewise supports the

6    requested award of attorneys' fees.  In *Lealao*, the court held that when determining the

7    appropriate award of attorneys' fees, the trial court should consider the need to

8    encourage the private enforcement necessary to vindicate many legal rights, as well as

9    the role that representative actions play in relieving the courts of the need to separately

10   adjudicate numerous claims.  *See Lealao*, 82 Cal. App. 4th at 53.  Here, by obtaining a

11   significant recovery for the class, Plaintiff's Counsel have vindicated the rights of eBay's

12   consumers while enforcing compliance with important consumer protection laws.

13                    **2.      The Substantial Contingent Risk, Including the Risk of Further**

14                            **Litigation, Supports the Requested Award of Attorneys' Fees**

15         The contingent risk that Plaintiff's Counsel assumed in prosecuting the action

16   supports the requested attorneys' fees and costs.  Plaintiff's Counsel took this case on a

17   pure contingency basis, and had no guarantee that they would receive any remuneration

18   for the 947 hours they spent litigating the Class's claims, or for the $13,050.04 in out-of-

19   pocket costs they reasonably incurred during the matter's pendency.  (*See* Friedl Decl. ¶¶

20   9, 13; Meneses Decl. ¶¶ 4, 6.)

21         Large-scale litigation of this type is, by its very nature, complicated and time-

22   consuming.  Due also to the contingent nature of the customary fee arrangement,

23   lawyers must be prepared to make this investment with the very real possibility of an

24   unsuccessful outcome and no fee recovery of any kind.  As the Ninth Circuit has

25   recognized, "attorneys whose compensation depends on their winning the case must

26   make up in compensation in the cases they win for the lack of compensation in the cases

27   they lose." *Vizcaino*, 290 F.3d at 1051.

28         The demands and risks of this type of litigation overwhelm the resources—and

1    deter participation—of many traditional claimants' firms.  For these reasons, California

2    courts and the Ninth Circuit recognize a need to reward Plaintiff's Counsel who accept a

3    case on a contingency basis.  In *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001), the

4    California Supreme Court instructed courts to upwardly adjust fee compensation to

5    ensure that the fees account for contingency risk:

> A lawyer who both bears the risk of not being paid and
> provides legal services is not receiving the fair market value
> of his work if he is paid only for the second of these
> functions.  If he is paid no more, competent counsel will be
> reluctant to accept fee award cases.

9    *Ketchum*, 24 Cal. 4th at 1133.

10   Similarly in *In re Washington Pub. Power Supply*, the Ninth Circuit underscored

11   the importance of rewarding attorneys who take cases on a contingency basis:

> It is an established practice in the private legal market to
> reward attorneys for taking the risk of non-payment by
> paying them a premium over their normal hourly rates for
> winning contingency cases.  *See* Richard Posner, Economic
> Analysis of Law § 21.9, at 534-35 (3d ed. 1986).  Contingent
> fees that may far exceed the market value of the services if
> rendered on a non-contingent basis are accepted in the legal
> profession as a legitimate way of assuring competent
> representation for Plaintiff who could not afford to pay on an
> hourly basis regardless whether they win or lose.

18   In *re Washington Pub. Power Supply.*, 19 F.3d at 1299, 1300-01 ("in the common fund

19   *context*, attorneys whose compensation depends on their winning the case, must make

20   up in compensation in the cases they win for the lack of compensation in the cases they

21   lose.").

22   As reflected in *Ketchum* and *In re Washington Pub. Power Supply*, attorneys

23   accepting contingent fee cases should be compensated in amounts greater than those

24   earned by attorneys who bill and receive payment by the hour, as this fact reflects the

25   risks undertaken in a contingent practice.  If a contingent-fee attorney were awarded fees

26   at the same level as an hourly-fee attorney, it would be economically irrational for any

27   attorney to accept a contingent-fee case because there would be absolutely no incentive

28   to accept the risks inherent in such representation.  *See* Posner, Economic Analysis of

1   Law (4th ed. 1992), at 534, 567 ("A contingent fee must be higher than a fee for the

2   same legal services paid as they are performed.  The contingent fee compensates the

3   lawyer not only for the legal services he renders but for the loan of those services.  The

4   implicit interest rate on such a loan is higher because the risk of default (the loss of the

5   case, which cancels the debt of the client to the lawyer) is much higher than that of

6   conventional loans."); Leubsdorf, *The Contingency Factor in Attorney Fee Awards*

7   (1981) 90 Yale L.J. 473, 480 ("A lawyer who both bears the risk of not being paid and

8   provides legal services is not receiving the fair market value of his work if he is paid

9   only for the second of these functions. If he is paid no more, competent counsel will be

10   reluctant to accept fee award cases.").

11         Here, the contingent risk is particularly high, partly because the scope of this

12   action is very narrow.  Certain types of sellers do not suffer from the alleged "delisting"

13   problem at the core of this action.  For instance, if a seller placed a "Buy It Now" listing

14   consisting of 10 copies of a book, and a prospective buyer clicked the "Buy It Now"

15   option to purchase one copy, the listing would **not** be delisted and would be available for

16   purchase by other prospective buyers.  This significantly limits the scope of Plaintiff's

17   claims because a substantial portion of eBay's overall listings consist of these multiple-

18   quantity listings. Other sellers have had the option to select an "Immediate Payment"

19   option, in which "Buy It Now" listings are **not** immediately delisted and are **only**

20   delisted after a buyer completes the payment process.  Listings with this option are not

21   part of this case.  And in many instances, sellers pay **no listing fees** to place a "Buy It

22   Now" listing under eBay's fees structure.  By definition, there could not be any damages

23   associated with these listings, even if they were delisted in the manner that Plaintiff

24   claims to be wrongful.

25         Aside the narrowness of his claims, Plainitff also would face tremendous

26   challenges proceeding to class certification.  Along with the typical challenges associated

27   with class certification (i.e., the attendant difficulties of proving ascertainability,

28   commonality and materiality), Plaintiff would also be confronted with the Ninth

Circuit's decision in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. Cal. 2012), which has called into question the viability of certifying a nationwide class under California's consumer protection laws. While *Mazza* does not affect the Settlement Class proposed here, eBay would have undoubtedly raised *Mazza* in an effort to limit the size and scope of the class had the case not settled.

Moreover, Plaintiff's effort to certify a class of eBay sellers could be complicated by the broad diversity among the members of the proposed class, which would span individuals and businesses with potentially wide-ranging levels of knowledge and sophistication about the practices at issue. eBay would argue that these differences preclude certification of Plaintiff's various consumer protection claims.

eBay would also be expected to oppose certification by attacking Plaintiff's proposed theory of classwide relief, which is based on awarding "refunds on a pro-rata basis to compensate the class member for time remaining on the listing duration after the nonselling item was delisted . . . ." (SAC ¶ 5.) Specifically, Plaintiff anticipates that, had the case proceeded, eBay would rely on the classwide dismissal it obtained in *In re eBay Litigation*, in which Judge Whyte held, in the context of that case, that a pro rata formula could not be used to award classwide recoveries as a matter of law. *See In re eBay Litig.*, No. C- 07-02198 RMW, 2012 U.S. Dist. LEXIS 128616, at *13 (N.D. Cal. Sept. 10, 2012). While Plaintiff disputes that Judge Whyte's findings would apply here, eBay would be expected to attack certification on these grounds.

Even if Plaintiff had succeeded in certifying the class, the risk of continued litigation would have remained high as Plaintiff would have had to grapple with eBay's many defenses to liability. For example, eBay argued that class members had agreed to forfeit the balance of their listing time whenever their "Buy It Now" items were delisted. According to eBay, the User Agreement—which governs the relationship between eBay and all end users—incorporates by reference "posted policies or rules applicable to services [available] through the sites." These policies include eBay's disclosures explaining that (1) Listing Fees "are charged at the time of listing … and are

nonrefundable," and (2) eBay "do[es] not guarantee … the ability of buyers to pay for items, or that a buyer or seller will actually complete a transaction or return an item." (*See* Dkt. No. 62, 4:1-7.)  With regard to "Buy It Now" listings, eBay advises that "[f]ixed price listings and auctions with the Buy it Now option end immediately when a buyer commits to purchasing the item." (*See* Dkt. No. 64, Ex. A at 7; Ex. E at 1.)  In addition, for vehicle listings in particular, eBay discloses that the "Successful Listing Fee" charged for vehicles is assessed when "[a] buyer clicks Buy It Now in a listing offering a fixed price … regardless of whether [the seller] carr[ies] out the sale with the buyer."[6]

Separately, eBay claims to allow qualifying sellers to relist their items and obtain a credit on their Insertion Fees for the relisting.  (*See id.*, Ex. K ("[I]f your listing ends without a winning buyer or with an unpaid item, you can qualify for a credit if you meet certain requirements.").)  To obtain a credit, the seller must initially pay the applicable Listing Fees for the relisting.  (*See id.*, Ex. L at 1.)  If the second listing results in a sale, the seller is automatically credited for the Insertion Fee he or she paid for the relisting. (*See id.*)

These substantial risks of continued litigation add to the contingent risk and support Plaintiff's requested attorneys' fees.  *See Noll v. eBay,* 309 F.R.D. at 609 (awarding 25% of the common fund based, in part, on counsel's taking on "substantial risk" of non-payment).

### 3.   The Skill of Counsel and Work Performed Support the Fee Request

The skill and experience of counsel and nature of work performed, also militate in favor of Plaintiff's fee request. *See City of Burlington v. Dague*, 505 U.S. 557, 562-563 (1992).  Plaintiff's Counsel are seasoned attorneys with considerable experience in consumer class actions.  (Friedl Decl. ¶ 8; Ex. A; Meneses Decl. ¶¶ 2-3.)  Here,

---

[6] *See* http://pages.ebay.com/help/sell/motorfees.html.

Plaintiff's Counsel's skillfully adapted their litigation strategies to address the challenges posed by the complex factual issues in this case. They also thoroughly investigated Plaintiff's claims and carefully analyzed documents and data provided by Defendants to assess its potential exposure as to the claims at issue. With this information, Plaintiff's Counsel developed theories of certification and liability that were persuasively presented at the mediation, paving the way for settlement.

### D. The Lodestar Cross-Check Attests To the Reasonableness of the Negotiated Fee Request

Plaintiff's fee request is premised primarily on a percentage of the settlement value, the prevailing method in cases of this kind. However, after making that determination, this Court may also use a lodestar analysis as a final "cross-check" on the percentage method. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1296-98. Where the use of the lodestar method is used as a cross-check, it can be performed with a less exhaustive cataloguing and review of counsel's hours. *See In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check.").

The lodestar method is calculated by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *In re Bluetooth*, 654 F.3d at 941. In considering rates, courts examine the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Here, the hourly rates for Plaintiff's Counsel are comparable to those approved in other cases in California and in the Southern California community—including cases where the rates of Capstone attorneys were specifically approved. *See Klee v. Nissan N. Am., Inc.,* 2015 U.S. Dist. LEXIS 88270, *38 (C.D. Cal. July 7, 2015) (approving rates of $370 to $695 for

1   attorneys at Capstone);  *See Aarons v. BMW of North America*, No. 11-7667-PSG, 2014

2   U.S. Dist. LEXIS 118442, **40-41 (C.D. Cal. Apr. 29, 2014) (based on "the Court's

3   own experience with hourly rates in the Los Angeles area" awarding rates ranging from

4   $775 for the requested partner to $390-$630 for non-partners, including attorneys at

5   Capstone); *Asghari v. Volkswagen Group of America, Inc.*, No. 2:13-cv-02529-MMM-

6   VBK (C.D. Cal. May 29, 2015) (approving billing rates of $695 and $520 for senior

7   counsel and $495 and $370 for associates).[7]

8          The billing rates are also consistent with rates for attorneys practicing in Northern

9   California.  *See Magsafe Apple Power Adapter Litig*., 2015 WL 428105, at *14 (N.D.

10  Cal. Jan. 30, 2015) (finding reasonable hourly reates in the Bay Area for partners ranging

11  from $560 to $800, for associates from $285 to $510, and for paralegals and litigation

12  support staff from $150 to $240); *Rose v. Bank of Am. Corp*., No. 5:11-CV-EJD, 2014

13  WL 4273358, at *12 (N.D. Cal. Aug. 29, 2014) (finding reasonable hourly rates in the

14  Bay Area for partners ranging from $350-$775, associates at $325-$525 per hour, and

15  paralegal rates between $100-$305 per hour).

16         The hours billed by Plaintiff's Counsel to the litigation are also reasonable.  In

17  considering reasonable hours, "[b]y and large, the court should defer to the winning

18  lawyer's professional judgment as to how much time he was required to spend on the

19  case; after all, he won, and might not have, had he been more of a slacker." *Moreno v.*

20  *City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  As the summary of hours

21  attests,[8] Plaintiff's Counsel expended 947 hours as of the date of this Motion.  (*See*

22

23         [7] *See also Kearney v. Hyundai Motor Am*., No. SACV 09-1298-JST (MLGx),
    2013 U.S. Dist. LEXIS 91636, *24, (C.D. Cal. June 28, 2013) (approving hourly rates of
24  $650-$800 for senior attorneys in a class action); *Parkinson v. Hyundai Motor America*,
    796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010) (approving hourly rates between $445 and
25  $675); *Barrera v. Gamestop Corp.*, No. CV 09-1399 (C.D. Cal. Nov. 29, 2010) ($700 an
    hour for partners; $475 an hour for associates); *Anderson v. Nextel Retail Stores, LLC*,
26  No. CV 07-4480 (C.D. Cal. June 20, 2010) ($655 to $750 an hour for partners; $300 to
27  $515 an hour for associates).

28         [8] It is well established that "[t]he lodestar cross-check calculation need entail

1   Friedl Decl. ¶ 9; Meneses Decl. ¶ 4.)  Plaintiff's tasks included investigating the claims,

2   interviewing class members, drafting three complaints, successfully opposing two

3   motions to dismiss, conducting informal discovery, preparing for and attending

4   mediation, obtaining post mediation information, negotiating a complex Settlement

5   Agreement, obtaining preliminary approval of the settlement, and working in concert

6   with the Claims Administrator, revising the class notice and preparing a press release.

7   (Friedl Decl. ¶¶ 2-6.)[9]

8        Significantly, there are no *Magsafe* issues here, as the three law firms that

9   participated did not duplicate tasks.  First, Capstone substituted in for Initiative Legal

10  Group APC as counsel for Plaintiff, so there is minimal overlap between work done by

11  the original and subsequent Plaintiff's attorneys.  Plaintiff also has not submitted the

12  lodestar for *any* work performed by a third Plaintiff's law firm, Morgado P.A., in an

13  exercise of billing judgment.  All together the total number of 947 hours of is reasonable

14  for a case that spanned over three years.  *See Sadowska v. Volkswagen Grp. of Am., Inc.*,

15  No. CV 11-00665-BRO AGRX, 2013 WL 9600948, at *9 and n.10 (C.D. Cal. Sept. 25,

16  2013) (crediting Professor Eisenberg's report that the 3,115 hours expended by

17  plaintiffs' counsel in that case are "comparable to other class action cases taking between

18  two to three years to resolve").

19       The resulting base lodestar, consisting of reasonable hours and rates, is

20  $557,3548.  (*See* Friedl Decl. ¶ 9 Meneses Decl. ¶ 4.)  Plaintiff's Counsel's lodestar

21  exceeds, by a factor of almost two, the requested fees amount and requires the

22  application of a *negative* multiplier on a cross-check.  The application of a "negative"

23  multiplier demonstrates that the requested fees are reasonable, as one Northern District

24  ─────────────────────────────────────────

25  neither mathematical precision nor bean counting . . . [courts] may rely on summaries
    submitted by the attorneys and need not review actual billing records."  *Bellinghausen v.*

26  *Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) (quoting *In re Rite Aid Corp.*
    *Secs. Litig.*, 396 F.3d at 306.

27       [9] Plaintiff's Counsel also wrote off all paralegal and staff time in an exercise of

28  billing discretion.  (*Id.*)

court has explained:

> This resulting *multiplier of less than one*, (sometimes called a negative multiplier) *suggests that the negotiated fee award is a reasonable and fair valuation* of the services rendered to the class by class counsel. [...] While it is certainly true that because the negative multiplier reflects a negotiated result that, like any bargain, represents a number of interests, calculations and risk analyses that provide a glimpse into the parties' collective views of the settlement at this precise snapshot in time, class counsel's willingness to negotiate a fee award reflecting a negative multiplier signals to the court that, in counsel's view, plaintiffs' case is weak and/or fraught with risk.

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010).

Otherwise, Plaintiff would be entitled to the application of a modest positive multiplier on a lodestar cross-check. Courts "routinely enhance[] the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d at 1051. Such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Id.* A lodestar adjustment would also be justified in light of Plaintiff's Counsel's delayed payment. *Missouri v Jenkins*, 491 U.S. 274, 284 (1989) ("an appropriate adjustment for delay in payment" should be factored into the calculation of a fee award); *see also Fischel v. Equitable Life Assur. Soc.*, 307 F.3d 997 (9th Cir. 2002) (in common fund cases, delay in obtaining payment must be compensated). Indeed, under federal case law, delay must be considered separately from any enhancement for contingency. Here, Plaintiff's Counsel have been paid nothing thus far for their work, advancing attorney and staff salaries and litigation expenses for the past year as this action was being litigated on behalf of the class.

Given that the Plaintiff's counsel seeks only $300,000, representing a *negative* multiplier of Plaintiff's Counsel's base lodestar of $557,538, the requested award is clearly reasonable and should be approved.

### E.    Plaintiff's Out-Of-Pocket Expenses Should Be Reimbursed

eBay has agreed to pay Plaintiff's Counsel's litigation expenses as part of the

negotiated fees.  For these expenses, the rule is that prevailing parties may recover, as part of statutory attorneys' fees, "litigation expenses…when it is 'the prevailing practice in the given community' for lawyers to bill those costs separately from their hourly rates." *Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (citation omitted).  In California, attorneys are reimbursed for out-of-pocket expenses "such as '1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees.'" *Johnson v. General Mills, Inc.*, No. 10-00061-CJC, 2013 U.S. Dist. LEXIS 90338, *20-*21 (C.D. Cal. June 17, 2013) (quoting *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (both courts awarding the requested expenses, including for expert witnesses, mediation, photocopying and computerized research).

Here, Plaintiff's Counsel have expended $13,050.40, which includes court fees, court reporter charges, delivery and postage, copies, PACER charges, travel expenses and mediation fees that would normally be billed to a paying client.  (*See* Friedl Decl. ¶ 13; Meneses Decl. ¶ 6.)  These expenses advanced to the Class are reasonable and should be reimbursed.

## F.     The Enhancement Payment to the Named Plaintiff Is Fair and Reasonable

"Incentive awards are fairly typical in class action cases . . . Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . . ." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B. Rubenstein et al.*, *Newberg on Class Actions* § 11:38 (4th ed. 2008)).  These payments work both as an inducement to participate in the suit and as compensation for time spent in litigation activities. *See Matter of Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (stating that an enhancement award should be in such an amount "as may be necessary to induce [the class representative] to

1    participate in the suit").

2         So long as the enhancement award does not create a conflict of interest between

3    the named Plaintiff and class members,[10] modest payments to named plaintiff for

4    services are customary and generally approved.  *See Van Vranken v. Atlantic Richfield*

5    *Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995).  To determine whether the proposed

6    enhancement payment is fair and reasonable, many courts in the Ninth Circuit apply "the

7    five-factor test set forth in *Van Vranken*."  *Grant v. Capital Mgmt. Servs., L.P.*, 2014

8    U.S. Dist. LEXIS 29836 *19 (S.D. Cal. Mar. 5, 2014).  Under the *Van Vranken* test,

9    courts consider:  (1) the risk to the class representative in commencing suit, both

10   financial and otherwise; (2) the notoriety and personal difficulties encountered by the

11   class representative; (3) the amount of time and effort spent by the class representative;

12   (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by

13   the class representative as a result of the litigation." *Van Vranken*, 901 F. Supp. at 299.

14        However, not all factors need to present.  Rather, the Court may weigh the factors

15   and, award fees that are "just and reasonable under the circumstances."  *See, e.g., In re*

16   *Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.,* 295

17   F.R.D. 438, 472 (C.D. Cal. 2014) (citing *Van Vranken*, 901 F. Supp. at 299).  Here, the

18   proposed enhancement payment of $5,000 to Mr. Rosado is fair,  reasonable and

19   consistent with the amount typically awarded in class actions.  Indeed, a $5,000

20   incentive payment to a class representative is "presumptively reasonable" in this

21   district.[11]

22

23        _____

     [10] The facts here do not create or exacerbate actual or potential conflicts between

24   the named plaintiff and the class—the primary ground for denying enhancement awards.
     *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1165 (9th Cir. 2013) (finding

25   that an agreement conditioning incentive payment on approving the class action
     settlement created a conflict between the class and the Plaintiff in denying the incentive

26   award and settlement).

27        [11] A $5,000 incentive payment to a class representative is "presumptively
     reasonable" in the Northern District of California.  *See, e.g., Faigman v. AT & T Mobility*

28   *LLC*, No. C06-04622 MHP, 2011 U.S. Dist. LEXIS 15825, 2011 WL 672648, *5 (N.D.

1    First, even though this is not an employment suit, that Plaintiff served as a class

2    representative in a class action exposes him to the risk of being branded "litigious" by

3    prospective employers, and may be denied future employment on that basis.  Second, the

4    enhancement award is reasonable because Plaintiff "remained fully involved and

5    expended considerable time and energy during the course of the litigation."  *Schaffer v.*

6    *Litton Loan Servicing, LP*, No. 05-07673-MMM, 2012 U.S. Dist. LEXIS 189830, *61

7    (C.D. Cal. Nov. 13, 2012) (citation omitted).  As detailed in his declaration, Plaintiff

8    expended considerable time and effort assisting his attorneys with the prosecution of the

9    class's claims and attending mediation, and his unique contributions to the litigation

10    should be rewarded.  (*See* Rosado Decl. ¶¶ 2-4.)

11    Third, the enhancement payment is appropriate because Plaintiff would otherwise

12    "will not gain any benefit beyond that he would receive as an ordinary class member."

13    *In re Toys "R" Us FACTA Litig.*, 295 F.R.D. at 472; *Van Vranken*, 901 F. Supp. at 299

14    (holding that a substantial award is appropriate where a class representative's claim

15    made up "only a fraction of the common fund.").  Here, absent the enhancement

16

17    Cal. Feb. 16, 2011).  Other courts have also used $5,000 as a benchmark for incentive
      awards.  *See, e.g., In re Mego Financial Corp. Sec. Litig.* 213 F.3d 454, 463 (9th Cir.
18    2000) (approving a $5,000 incentive award for each class representative); *Dennis v.*
      *Kellogg Co.*, No. 09-CV-1786-IEG (WMc), 2010 U.S. Dist. LEXIS 116924, 2010 WL
19    4285011, *3 (S.D. Cal. Oct. 14, 2010) (preliminarily approving an incentive award of
      $5,000); *Aguayo v. Oldenkamp Trucking*, No. F04-6279 AWI LJO, 2006 U.S. Dist.
20    LEXIS 79425, 2006 WL 3020943, *10 (E.D. Cal. Oct. 17, 2006) (preliminarily
      approving a settlement agreement, which provided that class counsel would apply for an
21    incentive award of no more than $5,000 for the named plaintiff).  $10,000 or more can
      be awarded for to class representatives.  *See, e.g., Bernal v. Davita, Inc.*, Case No. 5:12-
22    cv-03255-PSG, *2 (N.D. Cal, Jan. 14, 2014) ($10,000 incentive payment in $3.4 million
      class settlement);  *York v. Starbucks Corp.*, No. 08-07919 GAF, Dkt. No. 239, at *4
23    (C.D. Cal. Oct. 29, 2013) (approving enhancement award of $10,000 in a $3 million
      class settlement); *Ross v. US Bank Nat'l Ass'n*, No. 07-02951-SI, 2010 U.S. Dist. LEXIS
24    107857 (N.D. Cal. Sept. 29, 2010) (approving enhancement awards of $20,000 each to
      four class representatives in a $3.5 million class action settlement); *Stevens v. Safeway,*
25    *Inc.*, No. 05-01988, 2008 U.S. Dist. LEXIS 17119, **34-37 (C.D. Cal. Feb. 25, 2008)
26    ($20,000 and $10,000 award); *Amochaev v. Citigroup Global Markets, Inc.*, No. 05-
      1298 PJH (N.D. Cal. Aug. 13, 2008) (approving enhancement awards of $50,000 and
27    $35,000 to employees in light of factors that included fear of workplace retaliation).

28

MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENT

payment, Plaintiff will recover no more than other Class Members, despite his personal sacrifices in bringing this suit on behalf of the Class.

Moreover, Plaintiff has also agreed to generally release all claims he may have against Defendants.  These general releases are considerably broader than the separate, narrower releases required of Class Members.  *See Schaffer*, 2012 U.S. Dist. LEXIS 189830, at *64 ("[C]lass representatives released their actual damages claims as part of the Settlement.  This ["personal benefit"] factor, therefore weighs in favor of approving the Enhancement Payments.").

The amount of the requested enhancement payment is also reasonable by reference to the amounts that district courts in this Circuit have repeatedly found to be reasonable for class action settlements.  (*See* n.11, *supra*.)  In sum, the proposed enhancement payment to Plaintiff for his services in this action, the general release of all claims he has against Defendant, his assistance in prosecuting the claims, and the risk of being branded "litigious," is reasonable and deserved.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant the Motion for Attorneys' Fees, Costs, and Class Representative Enhancement Payment.

Dated:  December 1, 2015                                Respectfully submitted,

Capstone Law APC


By:  /s/ Robert K. Friedl
      Jordan L. Lurie
      Robert K. Friedl
      Tarek H. Zohdy
      Cody R. Padgett

      Attorneys for Plaintiff Luis Rosado